Bryan D. Smith, Esq. – *ISB No. 4411*
Douglas G. Bowen, Esq. – *ISB No. 8240*
SMITH, DRISCOLL & ASSOCIATES, PLLC
414 Shoup Avenue
P. O. Box 50731
Idaho Falls, Idaho  83405-0731
Telephone:  (208) 524-0731
Telefax:  (208) 529-4166

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| THE CHARLES HARNDEN LIVING TRUST, a California Trust, by and through its Trustee, RONALD HARNDEN, a California resident, | Case No. CIV-12-_____ |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation, | |
| Defendant. | |

COMES NOW Plaintiff, The Charles Harnden Living Trust, by and through its undersigned

counsel, and for its complaint against Defendant, Chicago Title Insurance Company, hereby

complains and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

2.       Venue in this district is proper pursuant to 28 U.S.C. § 1391.

3.       The damages claimed herein exceed the minimum jurisdictional requirements of this Court, the scope and nature of such damages to be proven at trial.

4.       Plaintiff, The Charles Harnden Living Trust ("Harnden"), is a California Trust which owns property located in Fremont County, Idaho.

5.       Defendant, Chicago Title Insurance Company ("CTIC"), is a Nebraska insurance company with its principal place of business in Lincoln, Nebraska.

## GENERAL ALLEGATIONS

6.       On or about April 7, 2011, CTIC issued that certain Owner's Policy of Title Insurance to Harnden, Policy No. 72306-83718485 (the "Title Policy").  A true, accurate and complete copy of the Title Policy is attached hereto as Exhibit "A" and is incorporated herein by reference.

7.       Harnden paid the premium amount for the policy.

8.       The real property ("Property") insured by the Title Policy in fee simple to Harnden is commonly known as 925 North 2925 East, which is comprised of two parcels

described in the Title Policy with the following legal description:

TRACT 1:  A Fraction of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho, on the South side of Fall River.

Beginning at a point 1289.85 feet West and 1130.00 feet North 0°18'06" East of the South Quarter Corner of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho (said point of beginning is a half-inch steel rod on the West side of a county road) and running thence West 470.00 feet; thence North 130.00 feet to the South bank of Fall River; thence more or less along the said South bank North 60°14'55" East 547.85 feet; thence South 1°32'00" West 210.70 feet along an existing fence line; thence South 191.24 feet to the point of beginning.

TRACT 1A:  Also included is an access roadway easement 25 feet in width, the centerline of which commences at a point 216 South of Fall River and 378 feet North of the Curr Ditch on a surveyed boundary line between Lots 10 and 11 of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho running thence East 250 feet, more or less, to the county roadway.  More precisely described as a roadway easement 25 feet in width, the centerline of which is described as beginning at a point 1308.00 feet North 0°18'06" East and 1290.78 feet West of the South Quarter Corner of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho, and running thence South 70°48'00" East 58.5 feet, more or less, to the West right-of-way line of the County Road.

9.      The Title Policy specifically insures Fee Simple title to Tract 1 of the Property And an easement over Tract 1A of the Property.

10.      The Title Policy further insures Harnden "against loss or damage . . . sustained or incurred by the Insured" by reasons contained in the Title Policy.

11.      The reasons for loss or damage outlined in the Title Policy include, but are not limited to, Title being vested other than as stated in Schedule A and unmarketable title.

12.      Contrary to the terms of the Title Policy, Harnden is not the fee simple owner of the Property nor does Harnden have marketable title.

13.      At the time CTIC issued the Title Policy, Harnden had a 1/2 tenant in common interest in the Property along with Marie B. Seeley and her successors and/or others (together "Seeley"), who also had and have a 1/2 tenant in common interest.

14.      Seeley maintains and has exerted physical control over the Property and its improvements to the exclusion of Harnden.

15.     Because of Seeley's ownership, possession and control of the Property, Harnden has suffered a loss under the Title Policy.

16.     Because of Seeley's ownership, possession and control of the Property, title to the Property is unmarketable further causing a loss under the Title Policy.

17.     On or about July 18, 2011, Harnden delivered a claim and demand to Alliance Title and Escrow Corp., agent for CTIC (the "Demand").  A true, correct and complete copy of the July 18, 2011 Demand is attached hereto as Exhibit "B" and is incorporated herein by reference.

18.     On or about July 28, 2011, CTIC's Claims Department acknowledged receipt of Harnden's demand (the "Acknowledgement").

19.     On or about August 3, 2011, CTIC delivered a letter to Harnden accepting Harnden's claim, but refusing to take any action as follows:

> Please refer to the Policy, specifically the Covered Risks section, which states in pertinent part, that the Company insures, not exceeding the Amount of Insurance, against loss or damage incurred by reason of: *"Title being vested other than as stated in Scheudle [sic] A,"*  The Company hereby accepts your claim pursuant to and in accordance with the terms and conditions of the Policy.  However, at this time there is no current pending action to enforce the Deed, to claim an interest in the Property, or assert that title to the Property is in any state other than as insured in the policy.  As such, the Company is not obligated to take action at this time.

20.     On or about August 9, 2011, Harnden responded to CTIC's refusal, citing Idaho case law which explained Idaho law dispelling CTIC's reasoning in its Acceptance and again demanding that CTIC cover Harnden's loss under the Title Policy.

21.     On or about August 16, 2011, CTIC again wrote to Harnden refusing to pay the policy amount or take any action to remedy the loss suffered by Harnden under the Policy.

## COUNT I
### (Breach Of Contract)

22.     Plaintiff incorporates by way of this reference all of the allegations set forth in paragraphs 1 through 21, and realleges them the same as though fully set forth herein.

23.     The Title Policy issued by CTIC to Harnden constitutes a valid and binding contract.

24.     Harnden has fulfilled all of its obligations under the Title Policy.

25.     Harnden has suffered a loss as defined by the Title Policy and applicable law.

26.     Harnden has made several demands for payment of its loss, but CTIC refuses to pay the loss as required by the Title Policy.

27.     For its failure to pay the amount due under the Title Policy, CTIC is in breach of the Title Policy.

28.     CTIC's actions have caused Harnden damage including the losses outlined in the Title Policy in the amount of at least $143,160.

29.     Harnden is further entitled to statutory interest at the rate of 12% on the amounts CTIC owes Harnden under the Title Policy.

## COUNT II
### (Insurance Bad Faith)

30.     Plaintiff incorporates by way of this reference all of the allegations set forth in paragraphs 1 through 29, and realleges them the same as though fully set forth herein.

31.     Implied in every insurance contract in Idaho is a duty of good faith and fair dealing owed by each party to the other.  The willful, intentional, and deliberate violation of that constitutes "bad faith."

32.     At all times alleged herein, CTIC was and is obligated to act in good faith and to deal fairly with Harnden with regard to handling Harnden's insurance claim for the payment of title insurance proceeds as alleged herein.

33.     CTIC has not acted in good faith and has not dealt fairly with Harnden as required because CTIC has not paid Harnden for the loss under the Title Policy as alleged herein.

34.     CTIC's failure to act in good faith is not fairly debatable and not the result of a good faith mistake.

35.     As a direct and proximate result of the wrongful conduct of CTIC, as alleged herein, Harnden has suffered damages under the Title Policy including, but not limited to, having to file a Partition action in Fremont County, Idaho, in which Harnden is unnecessarily incurring attorney's fees and costs, being unable to sell its Property, and being excluded from possessing its Property.

36.     CTIC's breach of the implied covenant of good faith and fair dealing, as herein alleged, further was and is an extreme deviation from reasonable standards of conduct, was and is totally unjustified, and done in disregard of fiduciary obligations and with an understanding of the adverse consequences to Harnden thereby entitling Harnden to amend this Complaint pursuant to Idaho Code § 6-1604 to seek punitive damages for such wrongful conduct.

**COUNT III**
(Attorney's Fees)

37.     Plaintiff realleges the allegations contained in paragraphs 1 through 36 of the

Complaint as if set forth in full.

38.     As a result of CTIC's failure and refusal to pay the amounts due under the Title

Policy, Harnden has been required to retain attorneys and incur attorney's fees and costs of

suit, which Harnden is entitled to recover from CTIC pursuant to Idaho Code §§ 41-1839 and 12-

121, 12-123, and I.R.C.P. 54(d).

**PRAYER FOR RELIEF**

WHEREFORE, The Charles Harnden Living Trust requests that this Court grant the

following relief:

1.      Entry of a judgment against Chicago Title Insurance Company and in favor of the

Charles Harnden Living Trust for Breach of Contract in the amount of the Title Policy;

2.      Entry of judgment against Chicago Title Insurance Company and in favor of the

Charles Harnden Living Trust for consequential damages in an amount to be proven at the time

of trial;

3.      Entry of judgment against Chicago Title Insurance Company and in favor of the

Charles Harnden Living Trust for compensatory damages caused to Charles Harnden Living Trust

in an amount to be determined at trial;

4.      For leave of court to amend this Complaint pursuant to the provisions of Idaho

Code Section 6-1604 to seek punitive damages against Chicago Title Insurance Company;

5.      Entry of judgment for prejudgment interest against Chicago Title Insurance

Company in an amount allowed under law;

6.      Entry of judgment in favor of the Charles Harnden Living Trust for the recovery of its reasonable attorneys' fees and costs pursuant to Idaho Code §§ 41-1839, 12-123, 12-121, and Rule 54 of the Idaho Rules of Civil Procedure; and

7.      For such other further relief as the Court deems just and proper.

DATED this _____ day of March, 2012.

SMITH, DRISCOLL & ASSOCIATES, PLLC

By_____
    Bryan D. Smith
    Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

COMES NOW the undersigned and makes demand for a jury trial of the issues in the above matter.

DATED this _____ day of March, 2012.

SMITH, DRISCOLL & ASSOCIATES, PLLC

By_____
    Bryan D. Smith
    Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**
F:\CLIENTS\BDS\8484\Pleadings\0001 Verified Complaint.DOC

EXHIBIT "A"

 **Chicago Title Insurance Company**

---

POLICY NO.:  ID2030-46-3041128542BL-2011.72306-83718485

## OWNER'S POLICY OF TITLE INSURANCE

Issued by

### *Chicago Title Insurance Company*

*Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.*

### COVERED RISKS

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:*

1.  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
    (a)  A defect in the Title caused by
        (i)  forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
        (ii)  failure of any person or Entity to have authorized a transfer or conveyance;
        (iii)  a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv)  failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v)  a document executed under a falsified, expired, or otherwise invalid power of attorney;
        (vi)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
        (vii)  a defective judicial or administrative proceeding.
    (b)  The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3.  Unmarketable Title.
4.  No right of access to and from the Land.
5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a)  the occupancy, use, or enjoyment of the Land;
    (b)  the character, dimensions, or location of any improvement erected on the Land;
    (c)  the subdivision of land; or
    (d)  environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  Title being vested other than as stated Schedule A or being defective
    (a)  as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b)  because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i)  to be timely, or
        (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

---

72306 (6/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

ALTA Owner's Policy (6/17/06)



10. *Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.*

*The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.*

*IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.*

CHICAGO TITLE INSURANCE COMPANY

By:

ATTEST                                    President

Secretary

Countersigned: _____
                    Authorized Signatory
                    Vicky Hanson

ID2030        3041128542BL
Alliance Title & Escrow Corporation
130 E Main St
Rexburg, ID 83440
Tel: (208) 356-9323
Fax: (208) 346-9325

72306 (6/06)                                                                                                    ALTA Owner's Policy (6/17/06)
**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association 

ALTA Owner's Policy (6-17-06)

## SCHEDULE A

Chicago Title Insurance Company

| Order Number | Policy Number | Date of Policy | Amount of Insurance | Premium Amount |
|---|---|---|---|---|
| 3041128542BL | 72306-83718485 | April 7, 2011 At 7:30AM | $143,160.00 | $811.00 |

**Address Reference:**   Not Addressed, St. Anthony, ID 83445

1.   Name of Insured:

    **Charles L. Harnden, Trustee of the Charles Harnden Living Trust u/t/d December 16, 2008**

2.   The estate or interest in the Land that is insured by this policy is:

    **Tract 1:  Fee Simple**
    **Tract 2:  Easement**

3.   Title is vested in:

    **Charles L. Harnden, Trustee of the Charles Harnden Living Trust u/t/d December 16, 2008**

4.   The Land referred to in this policy is described as follows:

**TRACT 1:  A Fraction of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho, on the South side of Fall River.**

**Beginning at a point 1289.85 feet West and 1130.00 feet North 0°18'06" East of the South Quarter Corner of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho (said point of beginning is a half-inch steel rod on the West side of a county road) and running thence West 470.00 feet; thence North 130.00 feet to the South bank of Fall River; thence more or less along the said South bank North 60°14'55" East 547.85 feet; thence South 1°32'00" West 210.70 feet along an existing fence line; thence South 191.24 feet to the point of beginning.**

**TRACT 1A:  Also included is an access roadway easement 25 feet in width, the centerline of which commences at a point 216 South of Fall River and 378 feet North of the Curr Ditch on a surveyed boundary line between Lots 10 and 11 of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho running thence East 250 feet, more or less, to the county roadway.  More precisely described as a roadway easement 25 feet in width, the centerline of which is described as beginning at a point 1308.00 feet North 0°18'06" East and 1290.78 feet West of the South Quarter Corner of Section 13, Township 8 North, Range 41 East, Boise Meridian, Fremont County, Idaho, and running thence South 70°48'00" East 58.5 feet, more or less, to the West right-of-way line of the County Road.**

END OF SCHEDULE A

ALTA Owner's Policy (6-17-06)

## SCHEDULE B

### Order No.: 3041128542BL  Policy No.: 72306-83718485

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorney's fees, or expenses that arise by reason of:

1. Rights or claims of parties in possession not shown by the public records.
2. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.
3. Easements, or claims of easements, not shown by the public records.
4. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.
6. Taxes or special assessments which are not shown as existing liens by the public records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

7. Taxes including any assessments collected therewith, for the year 2010, for which the first installment is paid and the second installment is due and payable on or before June 20, 2011.

8. Taxes, including any assessments collected therewith, for the year 2011, which are a lien not yet payable.

9. Right, title and interest of the Public in and to those portions of above described property falling within the bounds of roads and highways.

10. Levies and assessments of the Fremont-Madison Irrigation District, and the rights, powers and easements of said district as by law provided.

11. Any question of location, boundary or area related to the Fall River, including, but not limited to, any past or future changes in it.

12. Any difference in the mean high water line of the Fall River and the meander line as shown by government survey.

13. Any rights, interests or easements in favor of the public which exist or are claimed to exist over any part of said land covered by water that is included within the boundaries of Fall River.

14. Agreement and the terms and conditions contained therein
    Between: James Pearrell and Frances Pearrell, husband and wife.
    and: Virgil A. Blanchard and Blanche C. Blanchard, husband and wife.
    Recorded: December 4, 1984.
    Instrument No.: 388843 of Official Records.

15. An easement for the purpose shown below and rights incidental thereto as set forth in a document.
    Granted to: James Pearrell and his heirs and assigns forever.
    Purpose: Septic System.
    Recorded: October 23, 1997.
    Instrument No. 448580 of Official Records.
    Rerecorded:  December 16, 1999, as Instrument No. 460930.

16. The provisions contained in Quitclaim Deed.
    Recorded: April 12, 1999.
    Instrument No.: 456880 of Official Records.
    As follows: Water Rights.

17. Rights, interests, or claims which may exist or arise by reason of the following fact(s) shown on a
    survey plat entitled Record of Survey.
    Dated: August 10, 2000.
    Prepared by: Robert Jon Meikle.
    Recorded: October 16, 2000.
    Instrument No.: 465636.
    As follows: Boundary lines.

18. The interest, if any, of the grantee in the deed referenced below at the date of said deed the grantor
    therein had no record interest in said land and has not since acquired any.
    Grantor: James Pearrell.
    Grantee: Marie B. Seeley and Colleen B. Harnden.
    Recorded: July 18, 1997.
    Instrument/File No. 447018 of Official Records.
    Re-recorded: March 6, 1998 as Instrument No. 450489.

19. Any invalidity or defect in the title of the vestees in the event that the trust referred to in the vesting
    portion of Schedule A is invalid or fails to grant sufficient powers to the trustee(s) or in the event there
    is a lack of compliance with the terms and provisions of the trust instrument.

END OF SCHEDULE B

Countersigned:

Authorized Signature

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters:
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as 'Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.
    (i) The term "Insured" also includes
        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
        (C) successors to an Insured by its conversion to another kind of Entity;
        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
            (2) if the grantee wholly owns the named Insured,
            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

(ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

72306 (6/06)
Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

ALTA Owner's Policy (6/17/06)



## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were

72306 (6/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

ALTA Owner's Policy (6/17/06)



authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the In-

sured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefore in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or en-

72306 (6/06)

ALTA Owner's Policy (6/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



forcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at Chicago Title Insurance Company, Attn: Claims Department, P. O. Box 45023, Jacksonville, Florida 32232-5023.

72306 (6/06)                                                                                  ALTA Owner's Policy (6/17/06)
**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association 

This plat is made for location purposes only, no liability is assumed hereto for any incorrectness with actual survey.

13-8-41 Fremont Co. Idaho.
portion Govt Lot 11 (SW¼SW¼)

EXHIBIT "B"

*Moffatt Thomas*

MOFFATT THOMAS BARRETT ROCK & FIELDS, CHTD.

Richard C. Fields
John S. Simko
John C. Ward
D. James Manning
David B. Lincoln
Gary T. Dance
Larry C. Hunter
Randall A. Peterman
Mark S. Prusynski
Stephen R. Thomas
Glenna M. Christensen
Gerald T. Husch
Scott L. Campbell
Robert B. Burns
Michael E. Thomas
Patricia M. Olsson

Christine E. Nicholas
Bradley J Williams
Lee Radford
Michael O. Roe
Nancy J. Garrett
David S. Jensen
James L. Martin
C. Clayton Gill
Michael W. McGreaham
David P. Gardner
Julian E. Gabiola
Kimberly D. Evans Ross
Jon A. Stenquist
Mark C. Peterson
Tyler J. Anderson
Andrew J. Waldera

Dylan B. Lawrence
Paul D. McFarlane
C. Edward Cather III
Benjamin C. Ritchie
Amy A. Lombardo
Noah G. Hillen
Matthew J. McGee
David J. Dance
Mindy M. Willman

Robert E. Bakes, *of counsel*

*Willis C. Moffatt*, 1907-1980
*Eugene C. Thomas*, 1931-2010
*John W. Barrett*, 1931-2011
*Kirk R. Helvie*, 1956-2003

Boise
Idaho Falls
Pocatello

420 Memorial Dr
PO Box 51505
Idaho Falls Idaho 83405 1505

208 522 6700
208 522 5111 Fax
www.moffatt.com

July 18, 2011
*via E-mail*
*and U.S. Mail*

Todd S. Davis, Title Department Manager
ALLIANCE TITLE AND ESCROW CORP.
130 East Main
P.O. Box 732
Rexburg, ID 83440

**Re:  Policy Claim Re: Policy No. 72306-83718485**
MTBR&F File No. 24898.0000

Dear Mr. Davis:

On behalf of our client, The Charles Harnden Living Trust, we hereby make claim under the subject title policy and tender the defense of our client in the anticipated litigation. Alliance Title issued Policy No. 72306-83718485, effective April 7, 2011. On or about July 12, 2011, you indicated that Alliance had missed a deed of record that changed Alliance's opinion of my client's ownership from fee simple to joint ownership.

I have spoken to Chuck Homer, the attorney for the other purported joint owners of the property, who are hostile to my client and refuse to participate in the marketing and sale of the property. They also refuse to purchase my client's interest in the property. It is also our initial assessment that the property is of such nature and quality that it cannot be partitioned. Thus, the property cannot be put to use by my client in any way and is valueless. My client therefore demands immediate payment of the entire policy amount of $143,160.00 and requests that Alliance Title defend my client from any an all claims arising from the policy.

Your immediate attention to this matter is requested and required.

Sincerely,

Jon A. Stenquist

JAS/kkb
cc:    Harnden Trust

Client:2115299.1